No. 2355.
Second Circuit Appeal.

---

COLFAX MOTOR COMPANY, INC., v. A. E. O'QUINN.
ANDREW J. BUCKNER, Third Opponent.

---

(June 6, 1925, Opinion and Decree.)
(November 2, 1925, Writ of Certiorari to Supreme Court Refused.)

---

(*Syllabus by the Editor.*)

1. Louisiana Digest—Judicial Sales—Par. 4, 18.

A sale of an automobile by a constable without reading a mortgage certificate is a relative nullity.

2. Louisiana Digest—Judicial Sales—Par. 19.

A judicial sale cannot be attacked in a collateral manner in a proceeding in which the vendee is not a party.

3. Louisiana Digest—Judicial Sales—Par. 18, 19.

Whereas the failure by the constable to read the mortgage certificate makes the sale relatively null, the sale cannot be ignored by third party or attacked collaterally seizing the automobile in the hand of purchaser at previous sale. A direct action must be brought to have the sale declared null.

Appeal from Thirteenth Judicial District Court of Louisiana, Parish of Rapides. Hon. R. C. Culpepper, Judge.

This is an injunction suit by intervenor to prevent further proceedings by plaintiff in its suit against defendant to foreclose a mortgage on an automobile and to have the automobile decreed to be the property of intervenor and the seizure of it in plaintiff's suit illegal and for damages for illegal seizure.

L. R. Provosty, of Alexandria, attorney for plaintiff, appellant.

T. F. Hunter, of Alexandria, attorney for third opponent, appellee.

REYNOLDS, J. This is an injunction suit by intervenor to prevent further proceedings by plaintiff in its suit against defendant to foreclose a mortgage on an automobile and to have the automobile decreed to be the property of intervenor and the seizure of it in plaintiff's suit illegal and for damages for illegal seizure.

Intervenor claimed that he purchased the automobile at a sale made on January 3, 1925, to satisfy a judgment rendered in his favor against A. E. O'Quinn on December 17, 1924, in the Ninth Ward of Justice's Court of Rapides Parish.

He also alleges that at the time of the execution of the mortgage in favor of plaintiff the car was situated in Grant parish and that the mortgagor was a resident of that parish; that a chattel mortgage was executed and recorded in Grant parish on November 5, 1924, but was not recorded in Rapides parish until December 26, 1924; that the act recorded in Rapides parish does not purport to be a certified copy of the act recorded in Grant parish but purports to be an original instrument passed by the same notary in the presence of the same witnesses.

Plaintiff answered the intervention, denying its allegations and averring that the constable's sale at which intervenor bought the automobile was null and void because the constable did not obtain and read a mortgage certifiicate at the time of the sale.

It alleges that its mortgage was properly executed and recorded both in Grant and Rapides parishes and was a valid and subsisting mortgage on the automobile at the time of the seizure and sale under intervenor's judgment.

And in reconvention it prayed judgment against plaintiff $85.90.

On these issues the case was tried and there was judgment in favor of third opponent decreeing him owner of the automobile in controversy and awarding him $50.00 damages and from this judgment the plaintiff has appealed.

### OPINION.

Third opponent claims to be the owner of the property in controversy, a Ford automobile seized by plaintiff in a foreclosure suit against A. E. O'Quinn.

Third opponent, in support of his claim of ownership, submitted the following testimony.

A. J. Buckner testified, page 1:

"Q. You allege in your petition, to which you have sworn, that you bought a 22-horsepower Ford automobile at the Justice of the Peace sale, said car bearing motor number 7393970, of Ward Nine in this parish. Is that true?

"A. Yes, sir.

"Q. Mr. Buckner, you also allege that the defendant in the original suit, A. E. O'Quinn—that you had obtained a judgment against Mr. O'Quinn, in Ward Nine of Rapides parish. Is that true?

"A. Yes, sir.

"Q. Was this car seized under any judgment after you obtained that judgment?

"A. Yes, sir."

Page 3:

"Q. Was this car, after you obtained your judgment, duly advertised for sale?

"A. Yes, sir.

"Q. Was this car sold at public auction?

"A. Yes, sir.

"Q. Were there any other bidders on it besides yourself?

"A. Yes, sir, two or three other parties bid on it.

"Q. And it was sold to you?

"A. Yes, sir, as the highest bidder.

"Q. What did you do with the car?

"A. I took it out to my place on Chester street.

"Q. Now, after taking it out there, how long did you have it before the sheriff seized it?

"A. Some four or five days."

E. J. Vallery testified, page 11:

"Q. On what date did Mr. Buckner obtain a judgment against Mr. Quinn.
"A. On the 16th.
"Q. On what date did you seize this car?
"A. On December 19th, 1924.
"Q. On what date did you advertise it for sale?
"A. December 22nd, 1924.
"Q. On what date did you sell it?
"A. January 3rd, 1925.
"Q. To whom did you sell it?
"A. A. J. Buckner."

(Page 12):

"Q. Did you, in this case, sell this car at public auction, at a public sale?
"A. Yes, sir."

L. C. Huffman testified, page 13:

"Q. You have heard Mr. Buckner's testimony—I don't want to go over the whole procedure. You sold this car to A. J. Buckner at public sale, public auction?
"A. I did." * * *
"Q. Will you explain to the court how you sold this car?
"A. Well, the car was first advertised according to law, as far as I know, and they set the date to sell the car, between 11 and 12 o'clock, in the city court at Pineville—I offered this car for sale to the last and highest bidder. I had three bidders on this car—Mr. Buckner was one and Mr. O'Neal, Mr. Pat H. O'Neal, was the second, and there was another man but I disremember his name—he bid on it, and Mr. Buckner was the last and highest bidder; after I called it for the third time and no one raised it, I sold the car to Mr. Buckner." * * *
"Q. Did you advertise this car, or did Mr. Vallery advertise it?
"A. We were both together; Mr. Vallery was with me when we advertised the car, and I signed the advertisement myself; as I was constable, I signed it, in the Town Talk office."

From this testimony we are convinced that third opponent purchased at a judicial sale made under an order of court having jurisdiction the automobile seized under plaintiff's foreclosure suit.

Plaintiff alleges that the sale under which third opponent claims was an absolute nullity for the reason that no mortgage certificate was read by the constable at the time of the sale, as required by Article 678 of the Code of Practice, which provides:

"If they are lands, or other objects susceptible of being mortgaged, which are to be sold, the sheriff, after having declared of what they consist, as directed in the preceding article, shall also read, in an audible voice, the certificate which he shall have obtained for this purpose from the office of the register of mortgages in the parish where the sale is made, to show whether there exist any privileges or mortgages on the property offered for sale; provided that in the Parish of Orleans a certificate from the register of conveyances, showing that the vendor had not alienated in any other way the property about to be sold by him, shall be read by the sheriff, said certificate to give a clear description of said property; and the sheriff neglecting to procure such certificate before passing any act of sale, shall be liable to a fine of not less than two hundred and fifty dollars, nor more than five hundred dollars, and costs of court, one-half for the benefit of the complainant and other half for the benefit of the State."

Article 684 provides:

"Consequently, if the price offered in this case by the highest and last bidder is not sufficient to discharge the privileges and mortgages existing on the property, and which have a preference over the judgment creditor, there shall be no adjudication, and the sheriff shall proceed to seize other property of the debtor, if there be any."

Under Article 678 the penalty for failing to read the mortgage certificate is a fine. Under Article 684 the penalty provided is if the price offered is not sufficient to discharge all prior mortgages and privileges there shall be no adjudication.

The nullity provided for in Article 684 was held in Ash vs. Chemical, etc., Co., 107 La. 310, 31 South. 656, to be a relative nullity only; and to the same effect were the decisions in:

Loucks vs. Bank, 2 La. Ann. 617.

Robinett vs. Compton, Ibid. 861.

Whitehead vs. Wiley, 9 La. Ann. 214.

Southern Ins. Co. vs. Pike, 33 La. Ann. 823.

A fortiorari a sale by a constable without reading a mortgage certificate is a relative nullity.

Having found that the failure to read a mortgage certificate by the constable would render the sale only relatively null, plaintiff could not legally ignore such sale and seize the automobile in third opponent's possession.

A judicial sale cannot be attacked in a collateral manner in a proceeding to which the vendee is not a party.

Succession of Fontelieu, 28 La. Ann. 638.

Under cover of an action for partition, attack cannot be made by a plaintiff collaterally on a judicial sale.

Thibodeaux vs. Thibodeaux, 112 La. 906, 36 South. 800.

Errors and mistakes in judicial sales, when the nullity is entirely a matter of private interest, cannot be inquired into collaterally, but a direct action must be brought to have the nullity declared.

Hughes vs. Edson, 129 La. 866, 57 South. 154.

Under the evidence in the case it is conclusively established that at the time A. J. Buckner had the automobile seized under execution against A. E. O'Quinn there was no chattel mortgage on the automobile in favor of Colfax Motor Company, Inc., or its assign or recorded in Rapides parish; and third opponent having had the automobile seized and sold under execution as the property of A. E. O'Quinn when there was no mortgage recorded against it in Rapides parish, his purchase at the constable's sale conveyed him the property free from any lien and incumbrance.

It is admitted that $50.00 is a reasonable attorney's fee.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be affirmed.