No. 561

First Circuit

---

SHAW v. MARCEAUX

---

(December 30, 1929. Opinion and Decree.)

---

Medlenka, Brune & Chambers, of Crowley, attorneys for plaintiff, appellant.

Nugier & Gordy, and J. I. Boudreaux, of Abbeville, attorneys for defendant, appellee.

MOUTON, J. This suit was instituted by Howard Shaw as the holder for valuable consideration of a promissory note for $1,600 assigned to him by the F. B. Collins

Investment Company, which note is secured by a special mortgage on a tract of land situated in Vermilion parish, given by Aymar Marceaux, Jr., one of the defendants herein.

Plaintiff alleges that, under a writ issued in the case of the People's Bank & Trust Company, the land subject to his mortgage was on July 1, 1922, pretendedly adjudicated at sheriff's sale, to John Nugier of Vermilion parish. He further avers that the sale was made for $3,000; that, according to the recital of the sheriff's deed, he retained in his hands $89 for costs; and that $2,911, the remainder of the bid, was "attributed to the payment of certain special mortgages upon said property in favor of said F. B. Collins Investment Company." With reservation of his rights to attack the sale for nullity should he fail in this action, and to sue the sureties on the bond of Adam Boudreaux, sheriff at the time of the adjudication, plaintiff asks for judgment in solido against Aymar Marceaux, Jr., defendant, John Nugier, and Adam Boudreaux, for $1,600 with interest and attorney's fees, with recognition of his special mortgage on the property adjudicated, for its seizure and sale, and that he be paid by preference over its proceeds.

Howard Shaw having died since the suit was brought, the Northern Trust Company of Chicago, executor, was substituted as plaintiff.

Adam Boudreaux, sheriff at the time of the adjudication, admits the sale in the case of the People's Bank & Trust Company; also that the price of the adjudication was for $3,000, but which he alleges he never received. He avers that he got only the sum of $89 for costs, and denies all the other allegations of plaintiff's petition.

Aymar Marceaux, Jr., has passed out of the case, leaving John Nugier as the other defendant.

In the answer filed by John Nugier it is admitted that the mortgage was given by Aymar Marceaux, Jr., on the property in question, and that the mortgage was assigned to plaintiff. Nugier specially pleads that the property mortgaged was bid in by him for the People's Bank & Trust Company in the name of F. J. Montagne, and not "by F. J. Montagne on behalf of John Nugier," as appears in the proces verbal of the sheriff's sale. In connection with the foregoing averments, Nugier alleges that the adjudication was to the bank, which, doubting its validity, never took possession of the land, nor ever made itself responsible for any prior mortgages, but, as a matter of fact, abandoned the property. He also alleges that he never took possession thereof, nor ever assumed or made himself responsible for the prior mortgages on the property. He denies any liability to plaintiff for the amount sued upon or any part of it, and denies the other allegations of the petition.

Judgment was rendered below rejecting the demand, from which plaintiff appeals.

Exceptions of no cause of action were filed by Adam Boudreaux and John Nugier, which were referred by the court to the merits. We find it unnecessary to pass on the exceptions, as they are effectually disposed of by our judgment on the merits.

Article 684, C. P., in referring to adjudications in execution of judgments where the bid is insufficient, says: If the price offered by the highest bidder is not sufficient to discharge the privileges and mortgages existing on the property, that have a preference over the judgment creditor, "there shall be no adjudication, and the

sheriff shall proceed to seize other property of the debtor, if there be any."

The adjudication of the property in question was obtained by the People's Bank & Trust Company, the judgment creditor of Aymar Marceaux, Jr., as hereinabove stated. Marceaux had given his promissory note for $1,600, with a special mortgage on the property to secure its payment; also several prior special mortgages on the property as appears by the certificate of the clerk to the sheriff for the sale; and in all exceeding the sum of $6,000. These mortgages had a preference over the bank, judgment creditor of Marceaux. The highest bid offered for the property at the sheriff's sale was the sum of $3,000, for which it was adjudicated, apparently to John Nugier, according to the recitals of the proces verbal of the sale. It is evident that this sum was insufficient to discharge the special mortgages that had a preference over the judgment of the bank. In such a case under the specific provisions of article .684, C. P., "there should be no adjudication." This article of the Code has been construed in many decisions, dating from our earliest authorities.

In the case of Trudeau vs. McVicar, 1 La. Ann. 426, the property was adjudicated to Trudeau, plaintiff, through his agent, Edwards, for $500 for a price insufficient to discharge the special mortgages that existed on the property, and which had a preference over the claim of the judgment creditor. In that case Trudeau, purchaser, having been placed in actual possession of the property, it was contended he could not withhold the price. The court held that its delivery had been made in virtue of an adjudication expressly prohibited by law, consequently null, and that the possession, not having a title to support it, could not have been maintained, citing a

previous decision in support of its conclusions. It was held that a bond which Trudeau had given for a part of the price was without consideration, and was therefore not due by him.

In Pasley vs. McConnell, 38 La. Ann. 470, the court said that there was no better settled rule that, unless the price of adjudication exceeded the privileges and special mortgages, there could be no sale, affirming the case of Trudeau vs. McVicar, 1 La. Ann. 426, above cited, and subsequent decisions on this subject.

In De Armas vs. Morgan, Martin Reports (N. S.) vol. 3, p. 606, body of decision, Judge Martin, organ of the court, says:

"Whether we consider the plaintiff in the fieri facias, or the sheriff as the vendor, there was no price received or to be received by either. The mortgage creditor cannot be considered as the vendor, nor the sheriff as his agent, etc."

The court held that, as there was no price which is the essence of a sale, there was no adjudication.

In the decisions to which we have referred, it was unquestionably decided that, when the price offered was insufficient to pay the special mortgages that had a preference over the judgment creditor, there could be no sale, and that an adjudication made under such circumstances was an absolute nullity.

In Walmsley vs. Theus, 107 La. 417, 31 So. 869, Judge Breaux, on rehearing, after referring to the vigorous opinion by Judge Martin in third N. S., above cited, concludes, after citing other cases, that the nullity resulting in such cases from the inadequacy of the price to discharge the special mortgages is relative, and not absolute, and cannot be pronounced unless all the parties in interest are before the

court "in the issue of nullity." It would seem from these latter expressions of the Supreme Court through Mr. Justice Breaux that the nullity complained of here is not absolute, and, as there is no direct issue in nullity with all the parties in interest, this court cannot under a collateral attack hold that the adjudication was null.

Mr. John Nugier was the attorney of the People's Bank & Trust Company, and was representing it at the sheriff's sale at which the property was adjudicated. His testimony is that he did not buy the property for himself; that, as he doubted the validity of the sale, he put in a bid in behalf of F. J. Montagne for the benefit of the bank, and not for John Nugier, as it is recited in the deed. He says he rested the title in Montagne's name, as he thought at the time of the sale he could better defend the title; Montagne being a third party. A couple of days thereafter, after looking into the question, he decided that Marceaux's wife could annul the sale, the title was therefore refused, and he considered that the sale was abandoned. He says the bank paid the costs only, and that he had no knowledge the title had been recorded in his name until this suit was filed. It seems that the interest on the mortgage notes of the plaintiff was paid by some one a year or two after the property had been adjudicated. Upon being questioned on the subject, Nugier testified he did not know who had made these payments, and no proof was introduced by plaintiff in reference to the party from whom this interest had been received. On this point, therefore, the record gives no information.

Counsel for plaintiff say that there is no doubt that Mr. Nugier bought the property for himself at the sheriff's sale, although in their brief they say they do not question his integrity. Though so expressing themselves in reference to Mr. Nugier's character, they claim his testimony is unsupported, notwithstanding the fact that both Sheriff Boudreaux and F. J. Montagne were present in court during the trial, and could have been called upon by him to testify in the case. His failure to call these gentlemen to the witness stand, counsel contend, shows that they would not have corroborated his statement in respect to the adjudication.

Counsel, in support of this contention, refer us to Nunez vs. Bayhi, 52 La. Ann. 1719, 28 So. 349, which holds that, when a doubt is thrown on the reality of a transaction, the burden of proof is shifted to those who know the truth, and, when they fail to furnish information within their knowledge, the presumption of law is against them. They refer also to State vs. Brown, 35 La. Ann. 1057; Pruyn vs. Young, sheriff, et al., 51 La. Ann. 320, 25 So. 125.

Mr. Nugier testified fully on every phase of the issue presented in the case. He is an attorney at the Abbeville bar, where he has been practicing for many years, and is well known to the district judge who presided at the trial. Counsel for plaintiff in their brief testify to the character of Mr. Nugier for integrity. Such being the situation presented by the record, we think the court was authorized to accept the explanation of the transaction which was fully given by Mr. Nugier, and that there is no ground for a reversal because Ex-Sheriff Boudreaux and Mr. Montagne were not called by Mr. Nugier to corroborate his evidence, which shows he was not the purchaser of the property, but that the bank was, but refused the title and abandoned the sale. Nugier was therefore not bound by the adjudication which was pretendedly made to him as alleged by plaintiff, and is not liable to

plaintiff for the amount claimed by virtue of his mortgage note.

And, as the proof is that Ex-Sheriff Boudreaux received only the costs, and never got the price for the sale, no liability attaches to him for the amount claimed which was correctly rejected, with reservation of such rights as plaintiff may have to attack the sale for nullity and to sue the sureties on the bond of Ex-Sheriff Boudreaux.